******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# BOARD OF EDUCATION OF THE TOWN OF NEW MILFORD *v.* NEW MILFORD EDUCATION ASSOCIATION
## (SC 20140)

Robinson, C. J., and Palmer, D'Auria, Mullins,
Kahn, Ecker and Vertefeuille, Js.

*Syllabus*

The plaintiff board of education sought to vacate an arbitration award in which the arbitrator found that the board had violated the terms of the parties' collective bargaining agreement by improperly extending the workday for teachers on multiple occasions during the 2015–2016 school year. While the parties were in the process of negotiating a new collective bargaining agreement, the board gave notice to the defendant union that it planned to eliminate certain shortened school days that previously had been used to allow for teacher development during normal workday hours. After reaching an impasse in their negotiations, the parties submitted to a three member interest arbitration panel last best offers on several issues, including those relating to the impact of the notice sent by the board and the number of evening meetings that teachers were required to attend. Regarding the impact of the notice, the board's last best offer suggested no new language in the collective bargaining agreement, whereas the union's last best offer referred to its response regarding evening meetings. With respect to the number of evening meetings, the board's and the union's last best offers both permitted six evening meetings each school year, but the union's last best offer provided, in addition, that teachers should be paid for additional programs beyond the normal workday. The interest arbitration panel awarded the board's last best offers on both issues, noting that a grievance or future negotiations would be the appropriate forum to resolve any disputes regarding additional events scheduled beyond the normal workday. Following interest arbitration, the board published a calendar for the 2015–2016 school year eliminating the shortened school days and scheduling various events beyond the normal workday. Thereafter, the union filed a grievance, claiming that the board improperly extended the normal workday and exceeded the permitted number of events outside the normal workday. The parties subsequently agreed to submit three questions to an arbitrator, namely, whether the grievance was arbitrable, whether the claims set forth in the grievance were barred under the doctrines of res judicata and collateral estoppel on the basis of the prior interest arbitration, and whether the board violated the collective bargaining agreement by directing teachers to attend certain events beyond the normal workday. The arbitrator subsequently issued an award, finding that the matter was arbitrable and ruling in favor of the union on the merits. The trial court subsequently denied the board's application to vacate that award and granted the union's application to confirm, concluding that the board failed to demonstrate that the arbitrator had manifestly disregarded the law of res judicata and collateral estoppel and that, although the arbitrator lacked authority to determine the issue of arbitrability, the grievance was arbitrable. The board thereafter appealed from the trial court's judgment. *Held*:

1. The trial court correctly concluded that the arbitrator did not manifestly disregard the law of res judicata and collateral estoppel and, therefore, properly denied the board's application to vacate on those grounds: the board did not meet its burden of demonstrating that the arbitrator committed an obvious error when it concluded that the grievance was not barred by the doctrines of res judicata and collateral estoppel on the ground that the subject of the grievance was not addressed or resolved during the interest arbitration, as the interest arbitration panel decided only the language of the collective bargaining agreement by accepting the board's last best offers on the relevant issues, rather than deciding the issue of whether the board had violated the terms of that agreement, and the interest arbitration panel had explicitly acknowledged that disputes regarding events scheduled beyond the normal work-

day would need to be resolved through a grievance or future negotiations; moreover, the board did not meet its burden of demonstrating that the arbitrator ignored clearly applicable governing law, as a review of the arbitrator's award revealed that the arbitrator carefully considered the doctrines of collateral estoppel and res judicata, and, in any event, it was unclear whether the arbitrator was required to apply those doctrines in the absence of a provision in the collective bargaining agreement requiring arbitrators to follow prior arbitration decisions.

2. The board could not prevail on its claim that the trial court incorrectly concluded that the grievance was arbitrable under the terms of the parties' collective bargaining agreement: the issue of arbitrability was subject to judicial review, as there was nothing in the language of the collective bargaining agreement that clearly indicated an intent to submit that issue to the arbitrator's sole authority, and the board did not otherwise waive its right to judicial review of that issue merely by agreeing to include it in the grievance submission; moreover, the grievance was arbitrable because the collective bargaining agreement permitted, and the grievance in the present case involved, the arbitration of questions involving the interpretation or application of the agreement's express and specific provisions.

Argued October 18, 2018—officially released April 30, 2019

*Procedural History*

Application to vacate an arbitration award, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where the defendant filed an application to confirm the award; thereafter, the case was tried to the court, *Hon. John W. Pickard*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment denying the application to vacate and granting the application to confirm, from which the plaintiff appealed. *Affirmed.*

*William R. Connon*, with whom was *Zachary D. Schurin*, for the appellant (plaintiff).

*Martin A. Gould*, with whom was *Adrienne R. DeLucca*, for the appellee (defendant).

*Rebecca E. Adams* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

MULLINS, J. The plaintiff, the Board of Education of the Town of New Milford (board), and the defendant, the New Milford Education Association (union), which represents the teachers employed by the board, are parties to a collective bargaining agreement (agreement) governing the terms and conditions of that employment. The dispute in this case arises from the union's claim that the teachers' normal work day was extended improperly by the board in the 2015–2016 school calendar.

Prior to issuing the 2015–2016 school calendar, and while negotiating the agreement for the 2015–2018 period, the board notified the union that it planned to eliminate abbreviated school days. The abbreviated school days previously had been used to provide for teacher development that would take place after students were dismissed but still during the teachers' normal work day. After bargaining to impasse on a number of issues, the parties submitted the issues still in dispute to an arbitration panel (interest arbitration). Following the interest arbitration, the board issued its calendar for the 2015–2016 school year, which the union alleged improperly extended the teacher work day on multiple occasions.

As a result, the union filed a grievance alleging that the board had violated the agreement by extending the teacher work day and scheduling an excessive number of open house and similar evening events (grievance arbitration). The grievance was heard before an arbitrator, who ultimately decided it in the union's favor. The board then filed an application to vacate the grievance arbitration award with the trial court, and, thereafter, the union filed an application to confirm that award. The trial court denied the board's application to vacate and granted the union's application to confirm.

The board now appeals from the judgment of the trial court.[1] The board asserts that the trial court incorrectly denied its application to vacate the award because the arbitrator (1) manifestly disregarded the law by concluding that the doctrines of collateral estoppel and res judicata did not apply to bar the union's grievance because the merits of the grievance were decided by the interest arbitration panel, and (2) incorrectly concluded that the union's grievance was arbitrable under the terms of the agreement. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts and procedural history. Prior to the 2015–2016 school year, the board had used abbreviated school days, in which the students would be dismissed early, to provide teacher professional development within the teachers' normal work day of seven hours and fifteen minutes. While the parties were negotiating the agreement for the 2015–2018

period, the board provided the following notice to the union: "Notice of nonmandatory subject of bargaining . . . the board will eliminate abbreviated student school days starting in 2015–2016. Bargaining unit work previously done on these abbreviated days will take place outside of student hours." Ultimately, during the negotiation of the agreement, the parties reached impasse on a number of issues. The parties submitted six issues for arbitration before a three member arbitration panel, pursuant to the Teacher Negotiation Act, General Statutes § 10-153a et seq., only two of which are at issue in this appeal.

The fifth issue submitted by the parties was entitled "Impact of Notice of NonMandatory Subject of Bargaining [Regarding] Elimination of Abbreviated School Days." On that issue, the interest arbitration panel awarded the last best offer of the board, which was "[n]o new language." The sixth issue submitted by the parties was entitled "Number of Evening Meetings." On that issue, the interest arbitration panel also awarded the board's last best offer, which provided that "[s]ix evening meetings each school year may be scheduled for [o]pen [h]ouse or similar programs with teacher attendance required." The interest arbitration award was issued on November 21, 2014.

In June, 2015, approximately seven months after the interest arbitration panel issued its award, the board released the 2015–2016 school calendar. In that calendar, there were six after school professional development days and ten after school and evening open house and other similar programs. Thereafter, in August, 2015, the union filed a grievance on the basis of the board's issuance of the 2015–2016 school calendar.

In its grievance, the union made two main claims: (1) "The 2015–2016 [s]chool [c]alendar includes six . . . after school [p]rofessional [d]evelopment [d]ays. These days are in addition to regular staff meetings and exceed the number of staff meeting[s] allowed per month. The scheduled times for the after school professional development extends the work day for teachers beyond a 'reasonable amount of time.' The [b]oard failed to provide adequate notice to the [union] of the extended work day for teachers and failed to negotiate the impact of the additional extended days." And (2) "The 2015–2016 [s]chool [c]alendar includes ten . . . after school and evening '[o]pen [h]ouse and similar programs (e.g., curriculum presentations, parent-teacher conferences).' The . . . [a]greement allows the [b]oard to schedule six . . . such events per year. The [b]oard failed to provide adequate notice to the [union] of the extended work day for teachers and failed to negotiate the impact of the additional extended day[s]."

The grievance was ultimately heard before an arbitrator appointed by the American Arbitration Association.

Specifically, the parties agreed to submit the following three issues to the arbitrator: (1) "Is the grievance arbitrable pursuant to [a]rticle XII, [§ 12.04 (B), of the agreement]?"[2] (2) "Are the essential elements of the common-law doctrine of claim preclusion (res judicata) and/or issue preclusion (collateral estoppel) present? If so, should the arbitrator apply one or both of those doctrines, and dismiss the case with prejudice?" And (3) "Did the [board] violate the . . . agreement when it directed teachers to attend professional development activities and parent conferences beyond the scheduled teacher work day on the following days in the 2015–2016 school year: September 9, September 16, October 14, October 21, November 16, November 18, March 21, March 23, April 13, May 4? If so, what shall the remedy be?"

At the grievance arbitration, the board contested the arbitrability of the matter. As grounds for its claim, the board asserted that the union's grievance (1) failed to identify a violation of an express provision of the agreement, and (2) was barred by the doctrines of collateral estoppel and res judicata because the matter of extending the teacher work day and any concomitant impact already had been raised and decided before the interest arbitration panel.

Subsequently, the grievance arbitrator issued a written award, finding the matter arbitrable and ruling in favor of the union on the merits. The board then filed an application to vacate the grievance arbitration award with the trial court, and, thereafter, the union filed an application to confirm. The trial court, also by way of a written memorandum of decision, denied the board's application to vacate and granted the union's application to confirm. The trial court concluded that (1) the board did not demonstrate that the arbitrator manifestly disregarded the law, and (2) although the arbitrator did not have authority to determine arbitrability, the grievance, nevertheless, was arbitrable. This appeal followed. See footnote 1 of this opinion.

I

On appeal, the board first claims that the trial court incorrectly denied its application to vacate the award pursuant to General Statutes § 52-418 (a) (4)[3] because the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Specifically, the board claims that the trial court should have determined that the arbitrator manifestly disregarded the law by concluding that the doctrines of collateral estoppel and res judicata did not preclude the union from arbitrating its grievance because the merits of the grievance were decided by the interest arbitration panel. In particular, the board asserts that the parties already had negotiated, and the interest arbitration panel already had decided, the issue of the impact of

the elimination of abbreviated school days, and that the union's grievance was an attempt to relitigate that issue. We disagree.

"The propriety of arbitration awards often turns on the unique standard of review and legal principles applied to decisions rendered in this forum. [Thus, judicial] review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Parties to an arbitration may make a restricted or an unrestricted submission. . . .

"[U]nder an unrestricted submission, the [arbitrator's] decision is considered final and binding; thus the courts will not review the evidence considered by the [arbitrator] nor will they review the award for errors of law or fact. . . . A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. . . .

"Even in the case of an unrestricted submission, however, a reviewing court will vacate an award when an arbitrator has exceeded the power granted to [him or] her by the parties' submission. . . . [A] claim that [an arbitrator has] exceeded [his or her] powers may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the [arbitrator] manifestly disregarded the law."[4] (Citations omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 249–51, 117 A.3d 470 (2015).

In the present case, the arbitrator was required to determine whether the board violated a particular section of the agreement. Accordingly, the submission was unrestricted. See, e.g., *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 111, 779 A.2d 737 (2001) ("this court consistently has concluded that submissions that require arbitrators to determine whether a party has violated a particular section of a collective bargaining agreement constituted unrestricted submissions"). The board claims, however, that the trial court should have concluded that the arbitrator manifestly disregarded the law by failing to apply the doctrines of collateral estoppel and res judicata to bar the union from arbitrating the grievance.[5] Consequently, we must determine whether the trial court properly concluded that the arbitrator did not manifestly disregard the law of collateral estoppel and res judicata.

"[T]his court [has] outlined the following burden of

proof for claims that an arbitrator had issued a decision in manifest disregard of the law in violation of § 52-418 (a) (4) [as follows]: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is well defined, explicit, and clearly applicable." *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 848 n.12, 6 A.3d 1142 (2010).

In order to place the board's claim in context, we set forth the ruling and reasoning of the arbitrator on whether the doctrines of collateral estoppel and res judicata barred the union's grievance. The arbitrator ruled as follows: "The interest arbitration award fails to meet the requirement of a final judgment necessary for the application of claim preclusion. The interest arbitration award did finally determine the terms of the [agreement] to be interpreted and applied pursuant to [the third question submitted by the parties in the grievance arbitration]. However, the [interest arbitration] panel did not do more [than that]. To the contrary, the [interest arbitration] panel made clear that its award would not preclude the adjudication of this grievance. The [interest arbitration] panel stated on issues five and six that the matter of additional time outside of the normal work day will be resolved through the grievance process or additional negotiations." The arbitrator further explained that "[t]he interest arbitration award also fails to meet the requirement of issue preclusion that the issue must have actually been litigated and necessarily determined in a prior judgment so as to bar their further assertion. Only the terms of the [agreement] were resolved in the interest arbitration, not the subject of this grievance as explained [previously]."

The arbitrator's decision convinces us that the trial court correctly concluded that the arbitrator did not manifestly disregard the law with respect to the application of res judicata and collateral estoppel. That conclusion is supported by the fact that the board has failed to establish any of the three requirements necessary to show a manifest disregard of the law. As we have explained previously in this opinion, the board must show that "(1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is well defined, explicit, and clearly applicable." *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 298 Conn. 848 n.12. We examine each of these prongs in turn.

Starting with the first prong, we agree with the trial

court that the grievance arbitrator did not commit an obvious error in concluding that the subject of the grievance was not addressed in the interest arbitration. The parties submitted six issues to the interest arbitration panel. The fifth issue was entitled "Impact of Notice of NonMandatory Subject of Bargaining [Regarding] Elimination of Abbreviated School Days." On that issue, the board's last best offer read as follows: "No new language." The union's last best offer read as follows: "The impact [regarding] [e]limination of [a]bbreviated [s]tudent [d]ays is addressed in [the response to the sixth issue]." The interest arbitration panel adopted the board's last best offer on the fifth issue, which was no new language. As a result of the decision of the interest arbitration panel, article VII, § 7.02, of the agreement, which is entitled "Normal Work Day," remained the same as it had been previously—i.e., the normal work day continued to be seven hours and fifteen minutes.

The sixth issue was entitled "Number of Evening Meetings." On that issue, the board's last best offer read as follows: "Six evening meetings each school year may be scheduled for [o]pen [h]ouse or similar programs with teacher attendance required." The union's last best offer read as follows: "Up to six . . . meetings each school year may be scheduled for [o]pen [h]ouse or similar programs with teacher attendance required. In the event the [s]uperintendent designates additional [o]pen [h]ouses or similar programs beyond the normal teacher workday teachers shall be compensated at the rate of $100 for each such additional [o]pen [h]ouse or similar program. No teacher shall be required to attend [o]pen [h]ouse and/or similar programs on consecutive evenings." On this issue, the interest arbitration panel also adopted the board's last best offer, which provided that six evening meetings per school year could be scheduled.

Accordingly, the interest arbitration award on the fifth issue resulted in the previously existing provisions defining a "[n]ormal [w]ork [d]ay" being incorporated into the agreement.[6] Those provisions provided that a normal work day extends approximately thirty minutes after dismissal and that, if the board alters that work day, it must give notice thirty days in advance and negotiate the impact of the change. The interest arbitration award on the sixth issue provided that the board could schedule six evening meetings. Nothing in the language of the award by the interest arbitration panel, however, addresses additional time required of the teachers beyond their normal work day.

Indeed, the union's grievance does not challenge the provisions of the agreement defining the hours of the teachers' normal work day, which was decided by the interest arbitration panel. Rather, the union's grievance claims only that the 2015–2016 school calendar violates the express terms of the agreement by extending the

work day and increasing the number of after school or evening meetings. This is the critical distinction between the two arbitrations—the interest arbitration decided the language of the agreement between the parties, whereas the grievance arbitration decided whether the board had violated the terms of the agreement. Specifically, the union claimed that the 2015–2016 school calendar included (1) six after school professional development days that extend the normal work day beyond "a reasonable amount of time," and (2) ten after school and evening programs that exceeded the maximum number of six open house and evening programs allowed by the agreement. Although these topics may relate to the interest arbitration award, neither of them definitively was decided by the interest arbitration panel.

Furthermore, we find it telling and significant that the interest arbitration panel itself seemed to acknowledge that the types of issues addressed in the union's grievance were not decided by the interest arbitration. During the interest arbitration, the union asserted that "[i]f the [s]uperintendent required teachers to stay beyond their contractual work day, the request may be grieved or the [union] may demand to bargain the impact of such a request." (Internal quotation marks omitted.) In addressing this specific assertion, the interest arbitration panel stated in its decision that "[c]learly, this is an issue for the future."

With respect to the sixth issue submitted to the interest arbitration panel, the union asserted that "[t]he [b]oard's [o]ffer presents no such alternative [to meetings beyond the school day] and in the event additional time is needed outside of the regular work day it will either be resolved through the grievance process or additional negotiations." (Internal quotation marks omitted.) The interest arbitration panel recognized the union's claim and explained that, "[b]ased on the evidence before [it], that appears to be the appropriate place to resolve such an issue because resolution of meetings beyond the school day, excluding evening meetings, does not fall within the confines of the issue before us."

As the foregoing demonstrates, the interest arbitration panel did not address the subject of the union's grievance but, instead, recognized that those issues would need to be decided in the future. Indeed, as the arbitrator explained in the grievance award, "[t]he interest arbitration award did finally determine the terms of the [agreement] to be interpreted and applied . . . . [T]he [interest arbitration] panel did not do more [than that]." Accordingly, we cannot conclude that the trial court erred in confirming the grievance arbitration award insofar as the arbitrator found that the union's grievance was not litigated during, and resolved by, the interest arbitration.

The board also cites *In re Bloomfield Board of Education*, Conn. Board of Labor Relations Decision No. 2821 (July 3, 1990) pp. 4–5, in support of its position that the subject of the grievance had been bargained about by the parties during the negotiations and decided in the subsequent interest arbitration. Specifically, the board asserts that when it notified the union that it planned to eliminate abbreviated school days, the impact of that elimination became a mandatory subject of bargaining between the parties. The board further asserts that the fact that it was a mandatory subject of bargaining between the parties is support for its position that the trial court should have concluded that the doctrines of collateral estoppel and res judicata bar the union's grievance. We disagree.

We acknowledge that this court and the state Board of Labor Relations have repeatedly explained that "boards of education have the right to determine educational policy and unilaterally implement such policy decisions, but where this implementation impinges in some substantial way upon a major term or condition of employment, there arises a duty to bargain the impact." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, 299 Conn. 63, 75 n.9, 7 A.3d 371 (2010); see also *West Hartford Education Assn.* v. *DeCourcy*, 162 Conn. 566, 586–87, 295 A.2d 526 (1972). Contrary to the board's position, however, simply having a duty to bargain does not mean we necessarily must infer both that such bargaining occurred and was decided by the interest arbitration panel. Indeed, the record reflects that the interest arbitration panel stated that it was not deciding this issue. At best, there was notice of the board's intent to eliminate abbreviated school days, but nothing was decided regarding any time that would be required of the teachers beyond the normal work day. In fact, the interest arbitration panel astutely noted that without abbreviated school days, the issue of any additional time required of teachers beyond the normal work day was not before the panel and, thus, would need to be addressed through additional negotiation or a grievance. Accordingly, the trial court correctly concluded that the board did not meet its burden of demonstrating that the arbitrator committed an obvious error by finding that the union's grievance was not barred by the doctrines of collateral estoppel and res judicata.

With regard to the second prong of the manifest disregard of the law test, the board also has failed to demonstrate that the arbitrator "appreciated the existence of a clearly governing legal principle but decided to ignore it . . . ." *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 298 Conn. 848 n.12. In the present case, a review of the arbitrator's decision reveals that he appreciated the existence of, and fully examined, the doctrines of collateral estoppel and res judicata. He

did not ignore those doctrines. To the contrary, his decision reveals that he considered the doctrines in light of the facts of the present case and reached a reasoned determination that the union's grievance was not barred by the doctrines of collateral estoppel and res judicata.

The third and final requirement of the manifest disregard of the law test is for the board to show that "the governing law alleged to have been ignored by the [arbitrator] is well defined, explicit, and clearly applicable." Id. The board has not met its burden with respect to this prong either. First and foremost, the arbitrator did not ignore the governing law. Second, this court previously has concluded that, "in the absence of a specific contract provision to the contrary, an arbitrator is not bound to follow prior arbitration decisions, even in cases in which the grievances at issue involve the same parties and interpretation of the same contract provisions. Although an arbitrator may find well reasoned prior awards to be a compelling influence on his or her decision-making process, the arbitrator need not give such awards preclusive effect. Rather, the arbitrator should bring his or her own independent judgment to bear on the issue to be decided, using prior awards as the arbitrator sees fit, as it is the arbitrator's judgment for which the parties had bargained." *Stratford* v. *International Assn. of Firefighters*, *AFL-CIO*, *Local 998*, 248 Conn. 108, 125, 728 A.2d 1063 (1999).

In the present case, the parties have not pointed to, and we have not uncovered, any specific provision of the agreement stating that the grievance arbitrator was bound to follow prior arbitration decisions. In the absence of such a provision, it is not at all clear that the grievance arbitrator was required to apply collateral estoppel and res judicata, even if the elements of those doctrines were satisfied. See id., 124–25. Therefore, the trial court correctly concluded that the board did not meet its burden of demonstrating that the arbitrator ignored governing law that was clearly applicable to the present case.

Accordingly, we conclude that the board cannot prevail on its claim in the present appeal relating to the doctrines of collateral estoppel and res judicata, and that, for all of the foregoing reasons, the trial court correctly denied the board's application to vacate the grievance arbitration award on those grounds.

## II

The board also claims that the trial court improperly confirmed the grievance arbitration award because the arbitrator had incorrectly concluded that the grievance was arbitrable under the language of the agreement. Specifically, the board asserts that the agreement did not give the arbitrator authority to determine the question of arbitrability and that, on the merits, the grievance

was not arbitrable under the terms of the agreement.

In addressing this claim, we first determine our standard of review. As we explained previously in this opinion, when reviewing a denial of an application to vacate under § 52-418 (a) (4), we generally reverse only if we conclude that the arbitrator acted in manifest disregard of the law. However, when a party appeals from an arbitrator's "determination that the dispute was arbitrable, rather than from the award itself, we must examine more closely the question of our standard of review.

"[A party] can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, [it] has agreed so to do. . . . Because arbitration is based on a contractual relationship, a party who has not consented cannot be forced to arbitrate a dispute. . . . We recently noted that three distinct issues arise in cases such as the present one: (1) whether the parties agreed to arbitrate the underlying merits of the case, i.e., whether the matter is arbitrable; (2) who has the primary authority to decide that question—the arbitrator or the court; and (3) if the court has the primary authority to decide that question, whether the parties engaged in conduct that precludes judicial review of the arbitrator's decision on that matter. *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 709–10, 987 A.2d 348 (2010).

"In accordance with these principles, in determining our standard of review, we first examine who had the primary authority to resolve the question of arbitrability in the present case: the court or the arbitrators. It is well established that, absent the parties' contrary intent, it is the court that has the primary authority to determine whether a particular dispute is arbitrable, not the arbitrators. . . . Thus, courts generally review challenges to an arbitrator's determination of arbitrability de novo. . . .

"Because, however, [a]rbitration is a creature of contract parties may agree to arbitrate the question of arbitrability. . . . It is well established . . . that parties may agree to have questions concerning the arbitrability of their disputes decided by a separate arbitrator. . . . In apportioning, between the court and the arbitrators, the responsibility for determining which disputes are arbitrable, the language of the contract controls . . . . When deciding whether a party has agreed that an arbitrator should have the sole authority to decide arbitrability, we must not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so. . . . In this manner the law treats silence or ambiguity about the question who (primarily) should decide arbitrability differently from the way it treats silence or ambiguity about the question whether a particular [merits related] dispute is arbitrable because it is within the scope of a valid arbitration agreement . . . . In this state, the intention

to have arbitrability solely determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as all questions in dispute and all claims arising out of the contract or any dispute that cannot be adjudicated." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *New Britain* v. *AFSCME, Council 4, Local 1186*, 304 Conn. 639, 646–48, 43 A.3d 143 (2012).

The arbitration provision at issue in the present case, which is set forth in article XII, § 12.04 (B), of the agreement, provides as follows: "No grievance will be submitted to arbitration and no grievance will be arbitrable, unless it actually involves the interpretation or application of an express and specific provision of this [a]greement. Further, the arbitrator will only have authority to determine whether the [b]oard violated an express and specific provision of this [a]greement and will not have authority to add to, detract from or modify any such provision of this [a]greement." This language clearly does not reflect an express intention to have the arbitrator decide all questions in dispute or all claims arising from the agreement. This language also falls far short of the type of broad terms from which we will infer the parties' intent to have the arbitrator decide the question of arbitrability. See, e.g., *Liggett* v. *Torrington Building Co.*, 114 Conn. 425, 430, 158 A. 917 (1932) (language in contract that " '[a]ll questions in dispute and all claims arising out of said contract' " gave arbitrators authority to make determinations regarding "all questions of law and fact").

Rather, by providing that "the arbitrator will only have authority to determine whether the [b]oard violated an express and specific provision of this [a]greement," the arbitration provision limits the arbitrator's authority to resolving disputes about express provisions of the agreement, and does not extend that authority to the overall question of arbitrability. See, e.g., *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 304 Conn. 641, 649 (concluding that arbitration provision that read, " 'arbitration shall be used to redress all upgrades that have not been resolved in negotiations,' " limited the arbitrator's authority to the merits of the dispute and not to determining arbitrability). Thus, we cannot conclude that the arbitration provision in the agreement contained any expression of the parties' intent to submit the issue of arbitrability to the arbitrator's sole authority.

"Having determined that the parties did not clearly and unmistakably indicate in [their agreement or any documents submitted during the arbitration] an intention to waive judicial review of the question of arbitrability, we next turn to the third inquiry set forth in *Bacon Construction Co.*, which consists of two parts: preservation and waiver. *Bacon Construction Co.* v.

*Dept. of Public Works*, supra, 294 Conn. 710. A party preserves its right to judicial review of an arbitrator's conclusion regarding arbitrability by raising that issue before the arbitrator. Id. 'A party who [makes] such a challenge nonetheless may waive its right to judicial review by agreeing to vest the arbitrator with authority to decide' whether the matter is arbitrable. Id. In order to obtain judicial review of the arbitrator's arbitrability determination, therefore, a party must both preserve its claim and refrain from activities that would, in essence, estop that party from asserting its claim at a later time." *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 304 Conn. 650. In the present case, it is undisputed that the parties raised the issue of arbitrability before the arbitrator. Accordingly, the parties preserved their right to judicial review of that matter.

The union asserts, however, that the board engaged in conduct that waived its right to judicial review of the issue of whether the arbitrator had authority to decide arbitrability. Specifically, the union claims that the board's agreement to submit the question of arbitrability to the arbitrator precludes the board from seeking judicial review of that issue. We disagree. In *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 304 Conn. 651–52, this court explained that when relevant documents do not "evidence any intention by the parties to submit the question of arbitrability to the arbitrators for their full and final decision on the matter," the parties have not waived their right to judicial review of the issue of arbitrability. See id. (contrasting agreements in which parties agreed for issue of arbitrability to "be heard and fully and finally determined by this arbitration" [internal quotation marks omitted]); cf. *Bacon Construction Co.* v. *Dept. of Public Works*, supra, 294 Conn. 710–11 (concluding that defendant waived right to judicial review of arbitrator's determination of arbitrability by agreeing, during course of arbitration, that certain " 'issues may be heard and fully and finally determined by [the] arbitration' ").

The submission to the arbitrator at issue in the present case did not contain any language indicating that the arbitrator would make the full and final decision on the matter of arbitrability. The record also does not reflect that the parties had agreed, during the course of the arbitration, to have the arbitrator fully and finally decide the question of arbitrability. Thus, we reject the union's claim that, by merely submitting the question of arbitrability to the arbitrator, without more, the board waived its right to judicial review. Accordingly, the parties did not waive their right to judicial review of the question of arbitrability. Therefore, we review the question of whether the union's grievance was arbitrable under the terms of the agreement de novo. See *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 304 Conn. 651.

As we explained previously in this opinion, the arbitration provision of the agreement provides that "no grievance will be arbitrable, unless it actually involves the interpretation or application of an express and specific provision of this [a]greement." The union's grievance involves the interpretation and application of express provisions of the agreement—namely, article VII, § 7.02, of the agreement, which is entitled "Normal Work Day"; article VII, § 7.03, of the agreement, which is entitled "Staff Meetings"; and article VII, § 7.04, of the agreement, which is entitled "Open House." These are express and specific provisions of the agreement. Consequently, the grievance was arbitrable. Thus, although the arbitrator could not determine the question of arbitrability, nothing was amiss in the trial court's conclusion that, the grievance was, in fact, arbitrable.

Accordingly, we conclude that the trial court properly denied the board's application to vacate the grievance arbitration award and granted the union's application to confirm the grievance award.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The board appealed to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] Article XII, § 12.04 (B), of the agreement provides that "[n]o grievance will be submitted to arbitration and no grievance will be arbitrable, unless it actually involves the interpretation or application of an express and specific provision of this [a]greement. Further, the arbitrator will only have authority to determine whether the [b]oard violated an express and specific provision of this [a]greement and will not have authority to add to, detract from or modify any such provision of this [a]greement."

We note that there were certain technical changes to the designation of articles and sections within the agreement following interest arbitration between the parties. Citations to the agreement within this opinion use the designations set forth in the agreement covering the 2015–2018 period.

[3] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[4] The trial court found that the board failed to make any substantive argument as to how the grievance arbitration award failed to conform to the submission of issues before the arbitrator. We also do not read the board's brief as raising any such claim. Therefore, our review is limited to whether there was a manifest disregard of the law.

[5] "[T]he doctrines of collateral estoppel and res judicata, commonly referred to as issue preclusion and claim preclusion, respectively, have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit." *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57 n.16, 808 A.2d 1107 (2002).

[6] Article VII, § 7.02, of the agreement provides: "Normal Work Day

"A. The starting and dismissal times of all schools shall be set forth in administrative regulations and published for any succeeding year by no later than four . . . weeks prior to the opening of school. The work day shall be seven . . . hours and fifteen . . . minutes. The time that has been added to the teacher work day as of July 1, 2003 may be student instructional time.

"B. Provided that a teacher has no professional commitment (such as

assisting students after school, meeting the professional requirements of his or her position, participating in the activities deemed necessary to the maintenance and development of a good school) after notifying the office, he or she may leave the building ten . . . minutes before the end of the normal work day as defined in the administrative regulations of his or her particular school (the normal work day extends approximately thirty . . . minutes after student dismissal).

"C. In the event the Board of Education should alter the work day for teachers, the Board shall provide the Association with thirty . . . days advance notification and shall meet with the Association to negotiate the impact of such alteration. Such negotiations shall be subject to the provisions of [General Statutes §§ 10-153a through 10-153f]. This paragraph shall not be applicable to alterations in the work day which are otherwise covered by a specific provision of this [a]greement."

———————————————————