******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

CITY OF HARTFORD *v.* HARTFORD POLICE UNION
(AC 44230)

Cradle, Clark and Norcott, Js.

*Syllabus*

The plaintiff city sought to vacate an arbitration award issued in connection with its alleged breach of a collective bargaining agreement that it had entered into with the defendant police union. Between March, 2017, and June, 2018, all five of the city's police captains retired and their positions remained vacant until September, 2018, when they were filled simultaneously. The union filed a grievance, alleging that the city had violated the terms of certain appendices to the agreement, which it claimed required the city to maintain five police captain positions at all times. The parties submitted the issue for arbitration. An arbitration panel found that the city had violated the agreement by leaving open the vacancies and awarded each of the employees who were appointed to the position of police captain in September, 2018, an amount equal to the difference between their rate of pay on the date when the first police captain retired and their rate of pay on the date when they were appointed police captain, for the period between March, 2017, and September, 2018, not including any overtime worked during that period. The city filed an application to vacate the arbitration award, which the trial court denied, and the city appealed to this court. *Held*:

1. The trial court properly rejected the city's claim that the panel exceeded its authority in violation of the applicable statute (§ 52-418 (a) (4)) in finding that the city violated the agreement: although the agreement did not explicitly state that the city must employ five police captains at all times, the panel interpreted the language of the agreement in such a manner, such an interpretation was not unreasonable, and the city's disagreement with the interpretation was not sufficient to establish that the panel had exceeded its authority; moreover, the city could not prevail on its claim that the award failed to draw its essence from the agreement or that the panel was dispensing its own brand of industrial justice, because the award referenced only the appendices of the agreement that were referenced in the submission to arbitration and the panel's reference to the contractual requirement that the city fill vacancies within a specified period of time underscored its good faith effort to construe and apply the relevant terms of the agreement in the context of the questions submitted to it.

2. The city could not prevail on its claim that, because the award was inconsistent with the agreement, which explicitly stated that police captains were not entitled to overtime pay, the panel exceeded its authority in fashioning the remedy: the agreement did not provide a remedy for the violation at issue nor did it prohibit back pay and, therefore, back pay was not inconsistent with the agreement; moreover, the agreement did not require a prevailing party who established that he or she should have been promoted at an earlier date to return the salary, including overtime pay, that he or she was previously paid for work performed.

Argued December 1, 2021—officially released March 8, 2022

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Hartford, where the matter was tried to the court, *M. Taylor, J.*; judgment denying the application to vacate, from which the plaintiff appealed to this court. *Affirmed*.

*Alexandra D. Lombardi*, deputy corporation counsel, for the appellant (plaintiff).

*Marshall T. Segar*, for the appellee (defendant).

*Opinion*

CRADLE, J. The plaintiff, the city of Hartford (city), appeals from the judgment of the trial court denying its motion to vacate an arbitration award finding that it violated its collective bargaining agreement (agreement) with the defendant, the Hartford Police Union (union). On appeal, the city claims that the court erred in concluding that the arbitration panel (panel) did not exceed its authority in violation of General Statutes § 52-418 (a) (4) in (1) finding that the city violated the agreement and (2) ordering retroactive pay as a remedy, in addition to the overtime pay already received for that same time period. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the city's claims on appeal. As of March 3, 2017, there were five police captains employed by the Hartford Police Department. Beginning on that date those police captains began serially retiring over the course of approximately fifteen months, until the last of the five retired on June 15, 2018. All five of the captain positions remained vacant until September 23, 2018, when they all were filled simultaneously.

On November 15, 2018, the union filed a grievance alleging that, as of March 4, 2017, when the first of the five captains retired, the number of captains fell below the mandated number of captains required by Appendix I of the agreement, which provides in relevant part: "[F]ive (5) Police Captains shall be appointed prior to August 15, 1994 and the positions authorized for Lieutenant shall be filled prior to January 1, 1995. These positions shall not be decreased to allow for the assigning of Deputy Chief." The union also cited Appendix B of the agreement, which pertains to the compensation of members of the collective bargaining unit.

On April 17, 2019, the parties submitted the following agreed upon issue for arbitration: "Did the city of Hartford violate Appendix I or Appendix B of the [agreement] when the number of captains fell below five (5) effective March 4, 2017? If so, what shall the remedy be?" The union claimed that the city violated the agreement by allowing the number of police captains to decrease below five at any given time, and it sought back pay and benefits for the employees who were subsequently promoted to captain effective March 3, 2017. The city argued that the agreement did not require that the number of police captains must be strictly maintained at five and that the agreement did not provide for an award of back pay.

On December 5, 2019, the panel issued its award, finding that the city violated the agreement by leaving the captain vacancies open until September, 2018, and awarding the employees who were appointed on September 23, 2018, "an amount that represents the differ-

ence between their individual rates of pay on March 3, 2017, and the rate of pay they received when appointed captain for the period from March 3, 2017 to September 23, 2018, not including any overtime worked.''

On January 3, 2020, the city filed an application to vacate the arbitration award pursuant to § 52-418 (a) (4) on the ground that the panel exceeded its powers or so imperfectly executed them that a mutual, final and definite award on the subject matter submitted was not made.

By way of a written memorandum of decision filed on August 7, 2020, the court denied the city's application to vacate the arbitration award. In rejecting the city's argument that the panel exceeded its powers or so imperfectly executed them that a mutual, final and definite award on the subject matter submitted was not made when it found that the city had violated the agreement, the court reasoned: "According to Appendix I of the [agreement], in 1994, five of six police captain positions were required to be filled and were not to be reduced for the appointment of a deputy chief. Although this language does not specifically state that these five positions may not be decreased for any other reason, or must be maintained, or that . . . any such vacancies must be filled immediately, the decision of the panel certainly does not manifest an egregious or patently irrational application of the law.

"Although the court disagrees that the plain meaning of the contract language prohibits the delay of vacancy appointments amongst the ranks of Hartford police captains, it is not an unreasonable interpretation of the contract, taken as a whole. . . . Although the parties have different interpretations of the language of Appendix I, and although its language may be seen as ambiguous, the court will not fault the panel for failing to seek extrinsic evidence of the intent of the parties in this matter involving arbitration." (Citation omitted.)

As to the city's claim regarding the remedy awarded by the panel, the court explained: "The same analysis holds true for the remedy imposed by the panel. The [agreement] provides no remedy for a violation of the contract, as determined by the panel. Although retroactive pay does not appear to be provided for any purpose in Appendix B, it is not prohibited. Although the panel's decision reflects anguish over the elusiveness of an accurate and appropriate measure of damages for a perceived violation of the [agreement], imposing no remedy for a violation of the [agreement] would provide no real consequence or incentive to ensure future compliance.

"Without a remedy, the city would be free to avoid its responsibilities under the contract, as determined by the panel. Under the facts presented, the city was not required to pay police captains wages to five individ-

uals for approximately three, four, fifteen, seventeen and eighteen months, apparently saving the city just less than a year's worth of wages, on average, for five highly compensated professionals. Instead, pursuant to the decision of the panel, five lieutenants must be retroactively paid the difference between lieutenants' and police captains' salaries for a period of approximately eighteen months. It is unknown whether these payments represent an accurate and actual loss to each of these individuals, had they been selected to fill individual vacancies as they occurred; however, it is neither irrational to provide a measured remedy for a violation of the [agreement], nor is the panel's award unduly punitive in light of the city's apparent savings, resulting from its failure to timely fill these higher salaried positions. Aside from these practical considerations, importantly, the remedy is not inconsistent with any specific prohibition on arbitration within the [agreement] in this unrestricted submission to arbitration." On the basis of the foregoing, the court denied the city's application to vacate the arbitration award. This appeal followed.

On appeal, the city claims that the trial court incorrectly denied its application to vacate the award pursuant to § 52-418 (a) (4) because the panel "exceeded [its] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." The city challenges the court's denial to vacate the arbitration award both as to the violation of the agreement and the remedy.

We begin by setting forth the applicable standard of review. "The propriety of arbitration awards often turns on the unique standard of review and legal principles applied to decisions rendered in this forum. [Thus, judicial] review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Parties to an arbitration may make a restricted or an unrestricted submission." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 531, 205 A.3d 552 (2019).

Here, the court correctly concluded, and the parties do not dispute, that the submission to the panel was unrestricted.[1] "[U]nder an unrestricted submission, the [panel's] decision is considered final and binding; thus the courts will not review the evidence considered by the [panel] nor will they review the award for errors of law or fact. . . . Even in the case of an unrestricted submission, however, a reviewing court will vacate an award when an [arbitration panel] has exceeded the power granted to [it] by the parties' submission. . . . [A] claim that [an arbitration panel has] exceeded [its]

powers may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the [panel] manifestly disregarded the law." (Internal quotation marks omitted.) Id., 531–32.

"In considering whether the [panel] exceeded [its] powers on that basis, a reviewing court's inquiry is limited to a comparison of the award to the submission. . . . [A] court cannot base the decision [regarding whether the panel has exceeded its authority] on whether the court would have ordered the same relief, or whether or not the [panel] correctly interpreted the contract. The court must instead focus on whether the [panel] had authority to reach a certain issue, not whether that issue was correctly decided. . . . Because the [panel] is required to consider the submission in light of the parties' agreement, the [panel's] award . . . must draw its essence from the contract and cannot simply reflect the [panel's] own notions of industrial justice. But as long as the [panel] is even arguably construing or applying the contract and acting within the scope of [its] authority, that a court is convinced [it] committed serious error does not suffice to overturn [its] decision. . . . [E]very reasonable presumption and intendment will be made in favor of the award and of the [panel's] acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Citations omitted; footnote omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 252–53, 117 A.3d 470 (2015).

"[I]n determining whether the arbitration award draws its essence from the collective bargaining agreement, the reviewing court is limited to considering whether the collective bargaining agreement, rather than some outside source, is the foundation on which the arbitral decision rests. . . . If that criterion is satisfied . . . then [the court] cannot conclude that the [panel] exceeded [its] authority or imperfectly executed [its] duty. . . . Ultimately, [n]either a misapplication of principles of contractual interpretation nor an erroneous interpretation of the agreement in question constitutes grounds for vacatur. . . . It is not [the court's] role to determine whether the [panel's] interpretation of the collective bargaining agreement was correct. It is enough to uphold the judgment of the court, denying the . . . application to vacate the award, that such interpretation was a good faith effort to interpret the terms of the collective bargaining agreement." (Citations omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, 309 Conn. 767, 780, 75 A.3d 1 (2013).

In interpreting an agreement, a panel "may of course

look for guidance from many sources, yet [its] award is legitimate only so long as it draws its essence from the collective bargaining agreement. . . . If, for example, there was evidence that revealed that [the panel] had reached [its] decision by consulting a ouija board, [it would] not suffice that the award conformed to the submission. . . . It must be emphasized, however, that merely claiming inconsistency between the agreement and the award will not trigger judicial examination of the merits of the arbitration award. Rather, in the face of such a claimed inconsistency, this court will review the award only to determine whether it draws its essence from the collective bargaining agreement. . . . We will not, however, employ a broader standard of review simply as an alternative means for determining whether the [panel] correctly decided the issues that were submitted to arbitration. . . .

"Finally, we previously have stated that [m]erely because an arbitral decision is not based on the express terms of a collective bargaining agreement does not mean that it is not properly derived from the agreement. An [arbitration panel] is entitled to take cognizance of contract principles and draw on them for guidance in construing an agreement." (Citations omitted; internal quotation marks omitted.) *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 162 Conn. App. 525, 538, 131 A.3d 1238 (2016). With these principles in mind, we turn to the city's claims on appeal.

I

The city first claims that the trial court improperly concluded that the panel did not err in finding that it violated the agreement. We disagree.

The city's challenge to the panel's determination that it violated the agreement is twofold. First, the city argues that "[t]he award at issue here was rendered in excess of the [panel's] authority in violation of § 52-418 (a) (4) because it is inherently inconsistent with the agreement and fails to draw its essence [from the agreement], as evidenced by the panel's own admission in its memorandum that 'nothing in the agreement states that the city must "maintain" five (5) captains, as stated by the union.' " The city contends that, "[b]ecause the panel was unable to cite to a provision of the agreement that 'clearly' required the city to have five captains and admitted that the agreement contained no requirement to maintain five captains, but nonetheless found the city in violation of the agreement for allowing the number of captains to fall below five, one can only conclude that the panel disregarded its obligation to render an award that draws its essence from the agreement." Although the city accurately asserts that the agreement does not explicitly state that there must be five captains employed by the Hartford Police Department at all times, the panel interpreted the language of the agree-

ment requiring the city to hire five captains to mean that the city must maintain five captains at all times. We agree with the trial court that the panel's interpretation of the agreement was not unreasonable. The city's argument in this regard simply reflects its disagreement with the panel's interpretation of the agreement. It is well settled, however, that "[a] mere difference of opinion as to the construction of the [agreement] does not establish that the [panel] exceeded [its] authority . . . ." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 784.

The city also argues that the panel's award did not conform to the parties' submission. In support of this argument, the city cites the panel's statement that " '[t]he chief of police should be held responsible for maintaining a promotional list and discuss retirement with current captains, in order to prevent the vacancies that occurred in this case.' " The city contends that this statement by the panel demonstrates that it went beyond the scope of the submission, which was confined to claimed violations of Appendices B and I of the agreement and, instead, found a violation of Appendix F of the agreement. Because the panel's decision does not reference Appendix F, the city's argument is unfounded. Although the panel may have considered Appendix F, or any other sections of the agreement in interpreting Appendices B and I, which the city acknowledges it was entitled to do, the award's express reference to only Appendices B and I of the agreement underscore the focus of the panel's award. Moreover, the panel's reference to the contractual requirement that the city fill vacancies within a specified period of time underscores its good faith effort to construe and apply relevant terms of the agreement in the context of the questions submitted to it. We therefore disagree with the city's claims that the award failed to draw its essence from the agreement or that the panel was dispensing its own brand of industrial justice. Accordingly, we conclude that the trial court properly rejected the city's claim that the panel exceeded its authority in violation of § 52-418 (a) (4).

## II

The city also challenges the remedy awarded by the panel. As stated herein, the panel's award provided that the five newly promoted captains receive "an amount that represents the difference between their individual rates of pay on March 3, 2017, and the rate of pay they received when appointed captain for the period from March 3, 2017 to September 23, 2018, not including any overtime worked." The city argues that the panel exceeded its authority because the award was "inconsistent with the agreement, which explicitly states that captains are not entitled to overtime pay." We disagree.

In support of this argument, the city cites § 4.2 (A) of

the agreement, which provides in relevant part: "Police Captains shall . . . receive five percent . . . of the base rate of their class in lieu of all overtime pay . . . ." Therefore, the city correctly states that police captains are not entitled to overtime pay.

In considering the remedy for the city's violation of the agreement, the panel noted: "[T]here is nothing in the agreement that provides [for] a remedy [for the violation in this case]." The panel reasoned: "It is impossible to request back pay for those who would have taken the position and the exact number of hours they would have worked if they were captain, as opposed to lieutenant. These discrepancies make it difficult to make a determination as to what the remedy should be."

In rejecting the city's claim that the panel exceeded its authority in fashioning its remedy, the court agreed with the panel that the agreement provided no remedy for the violation at issue but that back pay was not prohibited by the agreement and, therefore, was not inconsistent with it. We agree. There is nothing in the agreement prohibiting the award of back pay in the event of a contractual violation; nor is there a provision in the agreement requiring a prevailing party who establishes that he or she should have been promoted at an earlier date to return the salary that he or she was paid for work performed. The submission also was silent as to the potential remedies available for the panel's consideration. To the extent that the newly promoted captains were permitted to maintain the compensation they received for overtime hours that they worked during the time period at issue, we cannot conclude that panel exceeded its authority in not ordering otherwise.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] " 'A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review.' " *Board of Education* v. *New Milford Education Assn.*, supra, 331 Conn. 531.