******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NORWALK POLICE UNION, LOCAL 1727,
COUNCIL 15, AFSCME, AFL-CIO, ET AL.
*v.* CITY OF NORWALK ET AL.
(SC 19667)

Rogers, C. J., and Palmer, Eveleigh, Espinosa, Robinson and Vertefeuille, Js.*

*Argued December 8, 2016—officially released February 14, 2017*

*Jarad M. Lucan*, with whom, on the brief, was *Saranne P. Murray*, for the appellant (named defendant).

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellee (named plaintiff).

*Opinion*

ROGERS, C. J. The issue that we must resolve in this appeal is whether the trial court properly vacated an arbitration award that had found that the defendant city of Norwalk (city) had just cause to terminate the employment of Stephen E. Couture, a police sergeant employed by the Norwalk Police Department (department). The plaintiff,[1] Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO, and the city are parties to a collective bargaining agreement (agreement) governing the terms and conditions of employment for certain police officers employed by the city. The agreement provides that disputes over its interpretation will be resolved through arbitration.

After Couture notified a fellow police officer, Thomas Cummings, of a pending criminal investigation against him, Harry W. Rilling, the chief of the department, reassigned Couture to the department's patrol division. Thereafter, Rilling determined that Couture may have violated a number of department rules and regulations by telling Cummings about the investigation. The allegations of misconduct were litigated in a public trial before the Board of Police Commissioners (board of commissioners). The board of commissioners concluded that Couture had violated a number of departmental rules and that his employment should be terminated. Couture disputed the board of commissisoners' decision through the grievance procedures set forth in the agreement and ultimately initiated an arbitration proceeding with the defendant State Board of Mediation and Arbitration (arbitration board). A majority of the arbitration board found that Couture had been terminated for just cause. Thereafter, the plaintiff filed an application to vacate the arbitration award pursuant to General Statutes § 52-418. After conducting an evidentiary hearing, the trial court, *Hon. Kevin Tierney*, judge trial referee, vacated the arbitration award on the ground that the city had disciplined Couture twice for the same misconduct in manifest disregard of the law. The city then filed this appeal.[2] We conclude that the decision of the arbitration board was not in manifest disregard of the law and, therefore, that the trial court improperly vacated the arbitration award.

The record reveals the following procedural history and facts that were found by the arbitration board or are undisputed. Couture started working at the department in 1984. He was promoted to the rank of detective in approximately 1987 and to the rank of sergeant in 1991. In 2001, Rilling appointed Couture as commander of the department's youth bureau.

During his tenure at the youth bureau, Couture became an experienced investigator of crimes involving persons under the age of majority. Couture's supervisor, Captain Rosemary Arway, considered him to be a leader

in the development of team approaches to interviewing child sexual assault victims and Internet sting operations.

Cummings was a lieutenant in the department and the commander of the detective division. Couture and Cummings had worked together for many years and were on friendly terms, although they were not social friends.

On Friday, October 26, 2007, Couture's subordinate, Detective Charles Perez, returned a telephone call that he had received earlier in the week from Jill Ruggiero, a detective with the Westport Police Department. Ruggiero informed Perez that there was an ongoing sexual assault investigation that was possibly going to be transferred to the department. Perez told Couture about his conversation with Ruggiero, and Couture instructed Perez to get further information. When Perez spoke again with Ruggiero that same day, the information that she provided led Perez to believe that the suspect in the investigation might be Cummings. Perez told Ruggiero that she should speak directly to Couture about the matter. Perez also called Richard Colangelo, an assistant state's attorney, and told him that the sexual assault suspect possibly was Cummings. At approximately 2:43 p.m., Ruggiero called Couture and gave him information about the investigation, and Couture confirmed that the suspect indeed was Cummings. At the end of that telephone call, both Couture and Ruggiero stated that they would report the situation to their respective chiefs of police.

Minutes after speaking to Ruggiero, Couture called Cummings' cell phone and made arrangements to meet him in a parking lot across the street from Norwalk High School. Couture spoke to Perez by cell phone while he was driving to the parking lot, but he did not inform him that he was on his way to meet Cummings. During the meeting in the parking lot, Couture told Cummings that he was a suspect in a sexual assault case that the Westport Police Department had been investigating. While Couture and Cummings were still together, Couture received a call on his cell phone from Colangelo. Couture spoke to Colangelo by cell phone again after he left the meeting with Cummings. Couture did not tell Colangelo during either conversation that he had met with Cummings and informed him that he was the suspect in the sexual assault investigation.

That same day, October 26, 2007, at 5:34 p.m., Couture telephoned Ruggiero from his extension at the police station. Couture told Ruggiero that the sexual assault investigation of Cummings was a "really big deal" and that, if word of it became public, it would likely draw the attention of the national news media. Couture further stated that if that occurred, it would be a very bad development for the department. Ruggiero had the impression that Couture was trying to tell her not to

make the situation "any bigger than it already was" and not to pursue the matter.

On the morning of Monday, October 29, 2007, Colangelo went to the department to meet with Rilling. When Colangelo told Rilling about the investigation of Cummings, Rilling indicated that he was concerned that Cummings might have been notified about it.[3] Colangelo assured Rilling that that was not the case. Rilling then called Couture into his office, and Couture confirmed that he had told Cummings about the investigation on the previous Friday. Rilling was angry and upset that Couture had done this without his knowledge or permission.

Later that day, Couture went to Colangelo's office and gave a sworn statement regarding the events of October 26, 2007. Couture stated that Ruggiero had advised him that the criminal investigation would be closed if the alleged victims did not come forward. Couture also stated that, while he was speaking to Cummings in the parking lot, Colangelo had called Couture and informed him that the matter would be investigated by the Westport Police Department. At that point, Couture knew that the investigation against Cummings was ongoing.

On February 12, 2008, Rilling reassigned Couture to the department's patrol division. On March 11, 2008, after being informed by Colangelo that Couture would not be the subject of any criminal charges, Rilling ordered an internal investigation to determine whether Couture had violated any of the department's policies or procedures when he informed Cummings about the sexual assault investigation. Captain Ernest Vitarbo conducted the investigation and provided a report to Rilling and, after reviewing the report, Rilling concluded that Couture may have violated several of the department's rules and directives.[4] Pursuant to the agreement, Rilling notified Couture that, because the discipline for a violation of those rules and regulations would exceed Rilling's authority under the agreement, Couture had the option either to have a disciplinary hearing before Rilling or to have a hearing before the board of commissioners.[5] Couture elected to have a hearing before the board of commissioners.

The board of commissioners conducted a hearing over four days, at which Couture was represented by both counsel for the plaintiff and his own private counsel. The board of commissioners found that Couture had violated §§ 4.1, 4.16 and 4.21 of the rules of conduct set forth in the department's police manual; see footnote 4 of this opinion; and concluded that Couture should be discharged from employment. The city terminated Couture on September 23, 2008, the same day the board of commissioners issued its decision.

On the same date, the plaintiff filed a grievance con-

tending that the city had terminated Couture without just cause, in violation of the agreement, and seeking his reinstatement. After exhausting internal grievance procedures, the plaintiff invoked its right to submit the matter to arbitration. The issues to be determined by the arbitration board were: "Was the discharge of . . . Couture for just cause?"; and "If not, what should be the remedy consistent with the [agreement]?" The plaintiff contended that Couture's termination violated double jeopardy principles because he previously had been subject to discipline for the same misconduct, namely, Rilling's reassignment of Couture to the patrol division.[6]

A majority of the arbitration board concluded that "[t]he question of double jeopardy is easily disposed of for two reasons, as follows: (1) [t]here was no grievance filed for this question and if there was, it is not before this panel of arbitrators;[7] and (2) [t]he [c]hief [of police] has the right to reassign officers in his command to any division in the department. The reassignment is not considered discipline." (Footnote added.) The majority further concluded that Couture's discharge was for just cause.

Thereafter, the plaintiff filed an application to vacate the arbitration award pursuant to § 52-418.[8] The plaintiff claimed that the arbitration board's decision was in "manifest disregard of the law" because it ignored the long-standing principle that due process violations, including double jeopardy violations, are part of a just cause analysis.[9]

During a subsequent hearing on the plaintiff's application to vacate, the trial court permitted the plaintiff to elicit testimony from Couture about the circumstances surrounding his transfer to the patrol division. The city objected to the admission of this testimony on the ground that the reason for the transfer was not an issue to be decided by the trial court. The trial court overruled the city's objection on the ground that it was unclear whether "this issue was fully covered by the arbitration . . . ."

In its memorandum of decision, the trial court concluded that Rilling's reassignment of Couture to the patrol division constituted discipline and that the plaintiff properly had raised the issue of double jeopardy before the arbitration board.[10] The court further concluded that, because the city had no right under the agreement to discipline Couture twice for the same incident, the arbitration board's decision that Couture's termination was for just cause was in manifest disregard of the law. Accordingly, the court granted the plaintiff's application to vacate the arbitration award.

The city then filed this appeal in which it claims that the trial court improperly allowed Couture to testify regarding the circumstances surrounding his reassignment to the patrol division and found that the reassign-

ment constituted discipline for the incident involving Cummings despite the arbitration board's finding to the contrary. The city further contends that, even if the reassignment did constitute discipline, there is no " '[well-defined], explicit, and clearly applicable' " law providing that double jeopardy principles apply to disputes involving employee discipline.[11] See *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 305, 680 A.2d 1274 (1996). Because we agree with the city's first claim, we need not address its second claim.

At the outset, we set forth the standard of review. "When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Citations omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Accordingly, "the factual findings of the arbitrator . . . are not subject to judicial review." *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 316 Conn. 618, 638, 114 A.3d 144 (2015); see also *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005) ("[u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact" [internal quotation marks omitted]).

Nevertheless, this court previously has recognized that "an award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has 'exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' " *Garrity* v. *McCaskey*, supra, 223 Conn. 10. We have emphasized, however, that "the 'manifest disregard of the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." Id.

"[T]hree elements . . . must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration

panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is [well-defined], explicit, and clearly applicable." *Saturn Construction Co.* v. *Premier Roofing Co.*, supra, 238 Conn. 305.

With these principles in mind, we address the city's claim that the trial court improperly found that Rilling had disciplined Couture when he reassigned Couture to the patrol division despite the arbitration board's finding to the contrary. We agree that the question of whether the reassignment was disciplinary is purely a question of fact. Our research has not revealed, and neither the plaintiff nor the trial court has cited, any authority for the proposition that the reassignment of an employee constitutes discipline as a matter of law, much less any such authority that is "[well-defined], explicit, and clearly applicable."[12] Id. In the absence of any such clear and explicit legal authority or contractual provision, the question of whether Rilling's reassignment of Couture constituted discipline is a question of fact to be decided by the arbitration board. Accordingly, the arbitration board's finding on this issue is not reviewable by the courts. See *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80 (when submission to arbitrator is unrestricted, "the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact" [internal quotation marks omitted]). We conclude, therefore, that the trial court improperly allowed Couture to give testimony on the issue and substituted its finding that Rilling's reassignment of Couture to the patrol division constituted discipline for the arbitration board's finding to the contrary. Because the trial court's conclusion that Couture was subject to double jeopardy was predicated on this finding, and because this conclusion, in turn, provided the basis for the court's determination that the arbitration award was in manifest disregard of the law, that determination cannot stand. Accordingly, we conclude that the trial court improperly vacated the award of the arbitration board.

The judgment is reversed and the case is remanded to the trial court with direction to deny the plaintiff's application to vacate the arbitration award.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh, Espinosa, Robinson and Vertefeuille. Although Justice Palmer was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] Couture also was originally named as a plaintiff in this action, however, the trial court, *Hon. William J. Wenzel*, judge trial referee, granted the city's motion to strike Couture as an improper party.

[2] The city appealed from the judgment of the trial court to the Appellate Court and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The record does not reflect the reasons for Rilling's suspicion that Cum-

mings had been notified.

[4] Specifically, Rilling concluded that Couture may have violated various rules of conduct that are set forth in the department's police manual, including § 4.1, which prohibits police officers from engaging in acts that constitute a violation of the rules, § 4.16, which prohibits police officers from engaging in unbecoming conduct that brings that department into disrepute, reflects discredit upon the officer or impairs the operation or efficiency of the department or officer, § 4.21, which prohibits police officers from disclosing confidential departmental business to unauthorized persons, and § 4.23, which prohibits police officers from withholding information relating to police business from superior officers for an improper purpose. In addition, Rilling concluded that Couture may have violated directive 2.8.12 of the department's police manual, which requires police officers to notify the chief of police of all complaints against the department or its employees.

[5] Article 19, § 1 (b), of the agreement provides in relevant part: "If, in the opinion of the [c]hief of [p]olice, disciplinary action of more than twenty . . . days suspension is warranted, then the employee will be advised by the [c]hief [of police] and be given the option of either having a disciplinary hearing before the [c]hief [of police], or before the [board of commissioners] . . . ."

[6] Article 19, § 1 (b), of the agreement provides in relevant part: "In no event can a member of the bargaining unit be disciplined by both the [c]hief [of police] and the [board of commissioners] concerning the same incident or complaint."

[7] The plaintiff had previously brought an arbitration proceeding on behalf of Couture in which one of the questions submitted to the arbitrator was whether the double jeopardy claim was arbitrable. The arbitrator concluded that it was not because, at the time that the plaintiff brought the arbitration proceeding, Couture had not yet been terminated.

[8] After the plaintiff filed its application to vacate in the Superior Court for the judicial district of Danbury, the city filed a motion to dismiss the action on the ground that it was brought in an improper venue because neither party was located in that judicial district. The city also filed a motion to strike Couture as an improper party because he was neither a party to the agreement nor a party to the arbitration proceeding. The trial court, *Hon. William J. Wenzel*, judge trial referee, granted the city's motion to strike; see footnote 1 of this opinion; and ordered that the case be transferred to the judicial district of Stamford-Norwalk.

[9] The plaintiff also claimed that a member of the arbitration panel had engaged in misconduct by participating in ex parte communications with a witness without the knowledge or consent of the parties. The trial court rejected this claim and the plaintiff has not challenged that ruling on appeal.

[10] The city has not challenged the trial court's finding that the plaintiff had raised the issue of double jeopardy before the arbitration board on appeal.

[11] We note that the arbitration board did not reach the double jeopardy issue because it concluded both that the issue was not before it and that Couture's reassignment did not constitute discipline. Accordingly, it would appear that, upon finding that the issue was before the arbitration board and Couture's reassignment constituted discipline, the trial court should not have decided the issue in the first instance, but should have remanded the case to the arbitration board. See *Board of Education* v. *East Haven Education Assn.*, 66 Conn. App. 202, 218–19, 784 A.2d 958 (2001) (court may remand case to arbitrator for new hearing). Because we conclude that the trial court improperly substituted its findings for the findings of the arbitration board, however, we need not address the question of whether the case should be remanded.

[12] In support of its finding on this issue, the trial court cited the holding of the Commonwealth Court of Pennsylvania in *Pennsylvania State Police* v. *Pennsylvania State Troopers Assn.*, 840 A.2d 1059, 1063 (Pa. Commw.), appeal denied, 578 Pa. 711, 853 A.2d 363 (2004), that the plaintiff employer's reassignment of its employee constituted discipline. The court in *Pennsylvania State Police* merely held, however, that whether a transfer constitutes discipline is a factual question to be decided by the arbitrator. See id. (when arbitrator found as matter of fact that transfer of employee was disciplinary measure, reviewing court was required to defer to that factual finding). The other cases cited by the trial court also do not support the proposition that a reassignment constitutes discipline. Rather, the cases merely support the proposition that a reassignment is the proper subject of a grievance. See *Duluth Police Union* v. *Duluth*, 360 N.W.2d 367, 370 (Minn. App. 1985) (defendant city had right to transfer and reassign personnel, but right was limited by seniority clause of collective bargaining agreement, police manual

and past practice); *Minneapolis Federation of Teachers, Local 59* v. *Minneapolis Special School District No. 1*, 258 N.W.2d 802, 806 (Minn. 1977) (decision to transfer teachers is managerial and not subject to negotiation, but criteria by which teachers are identified for transfer is negotiable and individual transfer is proper subject of grievance arbitration). Even if we were to assume that a reassignment is the proper subject of a grievance under the agreement at issue in the present case, that would not necessarily mean that it constitutes discipline.

_____