******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

DOMINIC LEMMA *v.* YORK AND CHAPEL, CORP.*

Superior Court, Judicial District of Ansonia-Milford
File No. CV-18-5016228-S

Memorandum filed December 19, 2019

*Proceedings*

Memorandum of decision on defendant's application to vacate and plaintiff's motion to confirm arbitration award. *Judgment denying the application to vacate and granting the application to confirm.*

*Stephen J. Curley*, for the plaintiff.

*Bruce L. Elstein*, for the defendant.

*Opinion*

PIERSON, J.

STATEMENT OF THE CASE

This action was commenced by an application for an order pendente lite in aid of arbitration and for a prejudgment remedy. According to a supporting affidavit filed by the applicant, Dominic Lemma, on March 2, 2018, he and the respondent, York & Chapel, Corp., entered into an executive agreement pursuant to which the applicant agreed to be employed by the respondent, part-time, from January 2, 2018 through December 31, 2018 (agreement). Further, according to the applicant, the respondent agreed to compensate the applicant at a rate of $50,000 per year on a semimonthly basis; permit the applicant to participate in group insurance and other health benefit plans; reimburse the applicant for business expenses; and provide paid holidays, vacation days, and sick leave.

The applicant alleges that, despite complying fully with his obligations under the agreement, the respondent terminated his employment on or about August 15, 2018, without cause or notice. The applicant further alleges that, as of the date of his termination, the respondent had failed to pay him wages and reimburse business expenses in accordance with the agreement. The applicant claims that a "Termination Payment" due under the agreement was not paid. He further claims that the failure to pay him wages may constitute a violation of General Statutes § 31-72, "which may entitle [him] to double damages." The applicant averred that probable cause exists to support an arbitration award in his favor "in at least the amount of $35,450.10 . . . ."

According to the applicant, on August 22, 2018, he demanded arbitration pursuant to the agreement "under the auspices of the American Arbitration Association." Section 11 of the agreement provides, at subsection (f), in part as follows: "At either party's option, any dispute arising directly or indirectly from the performance or breach of a party's obligations under this Agreement shall be resolved by binding arbitration before the American Arbitration Association [AAA], using its then current Commercial Arbitration Rules. The panel shall consist of one arbitrator. The Arbitration Panel shall be authorized to resolve all questions of law and fact between the parties, but shall not be authorized to award special, consequential or punitive damages."

The AAA "Online Filing Acknowledgement" form filed by the applicant, which served as a "Demand for Arbitration," reflects, inter alia, several claims—namely, that the respondent (1) failed to pay the applicant $2083.34 in salary through August 15, 2018, (2) failed to reimburse expenses of $4200 through August 15, 2018, and (3) owed a termination payment of "at least" $29,166.76. The "Claim Amount" listed on the

form is $34,450.10. The form also reflects that the respondent's alleged breach "constitutes a violation of [§] 31-72 entitling [the applicant] to double damages. Claimant also seeks interest, attorney's fees and arbitration costs."

The facts and circumstances surrounding the arbitration are largely undisputed. An arbitration hearing was scheduled to be held before James F. Stapleton, as arbitrator, on May 22 and 23, 2019. According to the respondent, on May 16, 2019, the respondent's attorney was informed "of the impending death of a close personal friend of over [forty] years. He . . . passed on May 16, 2019." On May 17, 2019, at 5:11 p.m., the applicant's attorney wrote to the arbitrator, stating that, "as of the close of business on May 17, 2019, Claimant has not received Respondent's Exhibits in conformance with Scheduling Order #1 as modified by the Arbitrator earlier this week. This situation compounds the prejudice suffered by Claimant, who timely complied with Scheduling Order #1."

In response, the respondent's attorney sent an e-mail to opposing counsel at 6:15 p.m. on May 17, 2019—on which the arbitrator was copied—which reads in part as follows: "I was informed Thursday morning of an impending death of a friend of over [forty] years. He passed yesterday afternoon. I knew he was in hospice. I was unable to work at all yesterday and very little today. The arrangements are still not firm but are anticipated to be Monday/Tuesday or Tuesday/Wednesday. It will be in [Foxborough] MA. I am giving the eulogy. I plan to work Monday [morning, as] I have a [long-standing] mediation in an important case and then will be out of town. Because I was unable to attend to this, I request a continuance of both the exhibits and the hearing."

The arbitrator continued the hearing by one day, from May 22, 2019, to May 23, 2019. An e-mail from the arbitrator dated May 18, 2019, reads, "[g]iven what has occurred [t]o date on this case and to be fair to all the following orders are hereby entered: the hearing is reduced to one day to be held on Thursday May 23, at 9 [a.m. . . .] and if [the respondent's counsel, Attorney Bruce L.] Elstein is unavailable [Attorney John J.] Ribas or another lawyer from that firm should handle the case on behalf of the [r]espondent."

The respondent's attorney did not return home from Massachusetts "until very late on May 22, 2019." On May 22, 2019, in the early afternoon, the respondent's attorney sent a second continuance request, which was denied.[1] Prior to the denial, counsel for the applicant sent two e-mails to the respondent's counsel (on which the arbitrator was copied) dated May 22, 2019, in which he stated in part as follows: "[M]y client is literally en route from points west to attend the hearing tomorrow. [The] [r]espondent has an entire firm (including Attor-

ney Ribas, who participated in the preliminary conference call in the arbitration and has represented [the] [r]espondent in related litigation proceedings) available to handle this proceeding. [The] [c]laimant has paid all of the fees for this arbitration, the hearing of which was scheduled in November. [The] [r]espondent has ignored deadlines, failed to make payments and caused avoidable motion practice (motion to dismiss counterclaim). Enough is enough. As I wrote last week, I, as a solo attorney, do not have availability to handle a rescheduled hearing for several weeks. The prejudice to [the] [c]laimant is therefore even more palpable than it was several days ago. [The] [c]laimant insists that we proceed as ordered tomorrow." Sometime later, the applicant's attorney wrote: "One last point—at least one [third-party] witness has been subpoenaed to the hearing tomorrow as well. Disrupting the hearing therefore causes inconvenience to more than just the [p]anel, the parties and counsel."

The arbitration hearing was held on May 23, 2019, before the AAA arbitrator. According to the respondent's counsel, "[b]ecause the undersigned counsel was unavailable, Attorneys Matthew Woods and John Ribas were required, at the last second, to scramble to prepare for a hearing they never intended to attend, never mind actually conduct."

The arbitrator issued a written award in the matter on July 9, 2019. In the award, the arbitrator concluded that the respondent "did not have [c]ause under the [a]greement to terminate the [c]laimant and is therefore liable for damages under the terms in the [a]greement as provided under Connecticut law as set forth herein." The arbitrator further concluded that the applicant was entitled to recover the following items of damage: (1) $1923.07 in salary for time worked before he received notice of his termination; (2) $2907.73 for uncovered expenses; (3) a $33,566.68 termination payment; and (4) $1923.07 in unpaid wages, doubled pursuant to § 31-72, on the grounds that the termination was unreasonable or arbitrary. Thus, the arbitrator awarded total damages of $40,320.55. The respondent was also directed to reimburse the applicant the sum of $8150, representing a one-half portion of administrative and arbitration fees, which were divided equally between the parties. Additional facts are recited below, as necessary.

On August 2, 2019, the respondent filed a motion to vacate and/or modify the arbitration award (No. 120.00). In the motion, the respondent asks the court to vacate or modify the arbitrator's award on four grounds: (1) by failing to continue the arbitration hearing held on May 23, 2019, the arbitrator was guilty of misconduct in violation of General Statutes § 52-418 (a) (3), for refusing to postpone a hearing for sufficient cause shown or other action by which the rights of any party

have been prejudiced; (2) the arbitrator exceeded his authority in violation of § 52-418 (a) (4) by requiring the respondent to pay more than the sum demanded in the arbitration; (3) the arbitrator exceeded his power in violation of § 52-418 (a) (4) in ordering the respondent to pay one-half of the arbitration expenses and denying the respondent's request for attorney's fees; and (4) an award of double damages pursuant to § 31-72 is unavailable in arbitration.

Thereafter, on August 29, 2019, the applicant filed an application to confirm the arbitration award pursuant to General Statutes §§ 52-417 and 52-420 (No. 123.00). On September 4, 2019, the applicant filed an objection to the respondent's motion to vacate and/or modify the arbitration award (No. 124.00).

The motion to vacate and/or modify, and the application to confirm, were submitted to the court on September 9, 2019, following oral argument, on which date the court took the matters under advisement. No evidentiary hearing was requested, and none is necessary for the court to resolve the motion and application presented. See *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 797–98, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019).

## DISCUSSION

### I

Our Supreme Court has held that, "for many years [it has] wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it falls within the proscriptions of § 52-418 of the General Statutes, or procedurally violates the parties' agreement will the determination of an arbitrator be subject to judicial inquiry." (Citations omitted; internal quotation marks omitted.) *O & G/ O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145–46, 523 A.2d 1271 (1987).

"A party's choice to accept arbitration entails a tradeoff. A party can gain a quicker, less structured way of resolving disputes; and it may also gain the benefit of submitting its quarrels to a specialized arbiter. . . .

Parties lose something, too: the right to seek redress from the courts for all but the most exceptional errors at arbitration." (Internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, supra, 191 Conn. App. 794, quoting *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 478–79, 899 A.2d 523 (2006). "The propriety of arbitration awards often turns on the unique standard of review and legal principles applied to decisions rendered in this forum. [Thus, judicial] review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 531, 205 A.3d 552 (2019).

"The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . . . [W]e have . . . recognized three grounds for vacating an [arbitrator's] award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Marulli* v. *Wood Frame Construction Co., LLC*, 124 Conn. App. 505, 509, 5 A.3d 957 (2010), cert. denied, 300 Conn. 912, 13 A.3d 1102 (2011), quoting *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 474. "If such party fails to carry [this] burden, then the court has no discretion but to confirm the award." *Between Rounds Franchise Corp.* v. *EDGR Real Estate, LLC*, 52 Conn. Supp. 295, 298, 40 A.3d 833 (2011), aff'd, 134 Conn. App. 857, 40 A.3d 342, cert. denied, 305 Conn. 905, 44 A.3d 181 (2012), citing *Middlesex Mutual Assurance Co.* v. *Komondy*, 120 Conn. App. 117, 128, 991 A.2d 587 (2010).

Section 52-418 (a) reads in part as follows: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Here, the respondent moves to vacate the arbitration award pursuant to § 52-418 (a) (3) and (4).

## II

"The concept of arbitral 'misconduct' does not lend itself to a precise definition but is, instead, best illustrated by example. . . . Among the actions that have

been found to constitute such misconduct on the part of an arbitrator as would warrant vacating an arbitration award are the following: participation in ex parte communications with a party or a witness, without the knowledge or consent of the other party . . . ex parte receipt of evidence as to a material fact, without notice to a party . . . holding hearings or conducting deliberations in the absence of a member of an arbitration panel, or rendering an award without consulting a panel member . . . undertaking an independent investigation into a material matter after the close of hearings and without notice to the parties . . . and accepting gifts or other hospitality from a party during the proceedings. . . . An award may likewise be set aside on the basis of procedural error by an arbitration panel if, for instance, the panel arbitrarily denies a reasonable request for postponement of a hearing . . . or commits an egregious evidentiary error, such as refusing to hear material evidence or precluding a party's efforts to develop a full record. . . . Though not exhaustive, these examples of arbitral misconduct delineate the broad contours of conduct that is unacceptable and prohibited under § 52-418 (a) (3). The presumptive validity of consensual arbitration awards depends upon the underlying integrity of the arbitration process. When that integrity is tainted either by actual impropriety or the appearance of impropriety, the arbitration award cannot be permitted to stand." (Citations omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 146–48. In order "to vacate an arbitrator's award on the ground of misconduct under § 52-418 (a) (3), the moving party must establish that it was *substantially prejudiced* by the improper ruling." (Emphasis added.) *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 476.

The court's analysis is aided further by reference to federal case law. As noted by our Supreme Court, "[u]nder 9 U.S.C. § 10 (a) (3),[2] a District Court 'may make an order vacating the award upon the application of any party to the arbitration . . . [w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.' This court previously has recognized that federal case law applying this statute is instructive because of the substantial similarity between the language of this statute and § 52-418 (a) (3)." (Footnote added.) Id., 475–76 n.7; see also *Windham* v. *Doctor's Associates, Inc.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-10-6004162 (January 3, 2012) (*Keegan, J.*) (53 Conn. L. Rptr. 264, 265) ("[o]ur Supreme Court regularly finds that federal cases pertaining to nearly identical provisions in the Federal Arbitration Act, 9 U.S.C. § 10, are instructive in analyzing § 52-418"), aff'd, 146 Conn. App.

768, 81 A.3d 230 (2013).[3]

As observed by the United States District Court for the District of Connecticut, "[t]he [United States Court of Appeals for the] Second Circuit has interpreted [§] 10 (a) (3) to mean that, except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review. . . . Arbitral misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator. . . . The party moving for vacatur must show not only that the arbitrator committed misconduct but also that the party was prejudiced as a result." (Citations omitted; internal quotation marks omitted.) *Vyas* v. *Doctor's Associates, Inc.*, United States District Court, Docket No. 3:17-cv-1774 (JCH) (D. Conn. March 21, 2018). "When determining whether to vacate an arbitral award on the ground that the arbitrator refused to continue a hearing, the court 'examines the facts and circumstances surrounding the arbitrator's refusal to grant an adjournment.' " Id.

A

"Parties to an arbitration are not entitled to a postponement merely by asking for one, nor is every decision of an arbitrator to deny a request for a postponement and proceed with the arbitration grounds for vacating the award. In passing on requests for postponements an arbitrator may balance the prejudice to the moving party resulting from the failure to postpone against the prejudice to the opposing party due to granting a postponement, the avoidability of such postponement, and other circumstances as warranted in each case." *Two Sisters, Inc.* v. *Gosch & Co.*, 171 Conn. 493, 499 n.4, 370 A.2d 1020 (1976); see also *Local Union No. 251* v. *Narragansett Improvement Co.*, 503 F.2d 309, 312 (1st Cir. 1974) ("Appellant's position in this case reduces to a claim that it is entitled to a postponement merely by asking for it. Such a view is obviously unacceptable.").

"The arbitrary denial of a reasonable request for a postponement may serve as grounds for vacating an arbitration award. . . . However, the expeditious resolution of a dispute remains one of the principal purposes for referring the matter to arbitration, and [9 U.S.C. § 10 (a) (3)] limits the [c]ourt's review to a determination as to whether the arbitrators were guilty of misconduct in refusing a postponement. As such, it follows that arbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement." (Citation omitted; emphasis omitted.) *Fairchild & Co.* v. *Richmond, Fredericksburg & Potomac Railroad Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981). In fact, "[a]rbitrators are given broad latitude to grant or deny parties' adjournment requests at their discretion." *Rai* v. *Barclays Capital, Inc.*, 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010) (citing *Tempo Shain Corp.* v. *Bertek*,

*Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)), aff'd, 456 Fed. Appx. 8 (2d Cir. 2011), cert. denied, 566 U.S. 979, 132 S. Ct. 2113, 182 L. Ed. 2d 877 (2012). "The court will not interfere with an award on these grounds as long as there exists a reasonable basis for the arbitrators' refusal to grant a postponement." (Internal quotation marks omitted.) *Rai* v. *Barclays Capital, Inc.*, supra, 371.

The court concludes that the arbitrator did not engage in misconduct in violation of § 52-418 (a) (3) and acted within his discretion when he denied the respondent's second request to continue the arbitration. This is because there were reasonable grounds for the refusal. To begin, the reason for the requested postponement—attendance at a close friend's funeral in a neighboring state—is insufficiently compelling to require an arbitrator to postpone, twice, a previously scheduled hearing. While the court takes seriously the attorney's loss of a close personal friend, that circumstance does not rise to the level of an event that would prescribe an adjournment in many circumstances, such as a medical emergency materially affecting the admission or presentation of evidence. See, e.g., *Bisnoff* v. *King*, 154 F. Supp. 2d 630, 638 (S.D.N.Y. 2001) ("absent a reasonable basis for its decision, a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the Federal Arbitration Act if it excludes the presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute"); *Allendale Nursing Home, Inc.* v. *Local 1115 Joint Board*, 377 F. Supp. 1208, 1214 (S.D.N.Y. 1974) (granting motion to vacate arbitration award where the plaintiff's administrative assistant became ill during arbitration proceeding and was taken to the hospital, and plaintiff had requested an adjournment on the ground that presence of administrative assistant was necessary to proper cross-examination of the defendant's witnesses). Here, the respondent has not demonstrated sufficient cause for the second requested postponement. See *Between Rounds Franchise Corp.* v. *EDGR Real Estate, LLC*, supra, 52 Conn. Supp. 301 (motion to vacate denied where the moving party submitted "no evidence establishing that it had demonstrated to the [arbitration] panel sufficient cause to obtain a postponement"); see also *Vyas* v. *Doctor's Associates, Inc.*, supra, United States District Court, Civil Action No. 3:17-cv-1774 (JCH) (denial of requests to postpone hearing not fundamentally unfair where sufficient cause not shown).

Moreover, according to the respondent, Attorney Elstein was back home from the funeral on May 22, 2019, albeit "very late." Thus, the respondent's attorney had returned by May 23, 2019, and the record does not reflect that Attorney Elstein was unable to attend the hearing. See *Vyas* v. *Doctor's Associates, Inc.*, supra, United States District Court, Civil Action No. 3:17-cv-

1774 (JCH) (motion to vacate denied where there was no allegation that parties, attorneys, or witnesses were unable to attend the scheduled hearing). In addition, and while Attorney Elstein did not attend the hearing, the respondent was represented by counsel at the hearing, namely, by two of Attorney Elstein's colleagues, at least one of whom had been involved previously in the case.

Finally, in declining the respondent's request for a second continuance, the arbitrator was not limited to a consideration of the respondent's concerns. Rather, the arbitrator was required to balance "the prejudice to the moving party resulting from the failure to postpone *against the prejudice to the opposing party due to granting a postponement . . .* and other circumstances as warranted in each case." (Emphasis added.) *Two Sisters, Inc.* v. *Gosch & Co.*, supra, 171 Conn. 499 n.4. Here, in opposing the second requested continuance, the applicant's counsel cited as prejudicial, inter alia, the fact that (1) the applicant was "en route from [the West Coast] to attend the hearing," (2) at least one third-party witness had been subpoenaed to the hearing, and (3) the applicant's counsel, as a solo attorney, could not handle a rescheduled hearing for a period of time. In light of the fact that arbitration is designed to afford parties a more expeditious resolution of their disputes, and in balancing the prejudice to the parties and the other circumstances existing, it was within the arbitrator's discretion to deny the second requested continuance of the hearing date. No proof of bad faith or gross error on the part of the arbitrator has been presented, and the arbitrator did not engage in misconduct under § 52-418 (a) (3).

B

Furthermore, even if the arbitrator's refusal to grant a second continuance constituted misconduct, the respondent has not demonstrated that it was prejudiced by the arbitrator's actions, let alone substantially prejudiced. The respondent was represented by counsel in the arbitration proceeding. No evidence was allegedly precluded at the hearing. See, e.g., *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 483–86 (affirming trial court order vacating arbitration award where party was prejudiced by arbitrator's failure to consider testimony that was highly probative and likely to have altered outcome if introduced).

The only specific ground of prejudice cited by the respondent is that Attorney Elstein had interviewed personally a third-party witness in advance of the hearing and that the witness testified at the hearing "in direct contravention to her prior statements." Even if accepted as true, this fails to demonstrate substantial prejudice to the respondent. The respondent fails to show, specifically and by sufficient evidence, that Attorney Elstein's presence at the hearing would have altered

the impact of this testimony or the arbitrator's award. See, e.g., *Jenkins* v. *Jenkins*, 186 Conn. App. 641, 650, 200 A.3d 1193 (2018) (affirming trial court's denial of motion to vacate arbitration award and noting that plaintiff failed to show that particular witness' testimony "would have impacted the outcome of the proceedings"); see also *Hartford Municipal Employees Assn.* v. *Hartford*, 128 Conn. App. 646, 659, 19 A.3d 193 (testimonial evidence from individual witness was not so central to plaintiff's case that panel's failure to consider it constituted misconduct), cert. denied, 301 Conn. 934, 23 A.3d 730 (2011). Thus, the respondent has not demonstrated substantial prejudice resulting from the arbitrator's refusal to grant a second continuance of the arbitration hearing.

III

The respondent also argues that the arbitrator exceeded his powers because he awarded the applicant an amount in excess of the amount listed on the demand for arbitration form submitted by the applicant to the AAA. The argument is rejected.

In *Quinn Associates, Inc.* v. *Borkowski*, 41 Conn. Supp. 17, 20, 548 A.2d 480 (1988), the defendant sought to vacate an arbitration award on the ground that the arbitrator exceeded his authority in making an award. According to the defendant in that case, "the submission is restricted by the amount of $21,854.06 that the plaintiff claimed in the original demand for arbitration and . . . the arbitrator exceeded his power by awarding $29,283." Id., 21. In denying the motion to vacate on this ground, the court in *Quinn Associates, Inc.*, observed, "[t]he defendant cites no authority in Connecticut or elsewhere for this contention, and this court can find none. . . . In this court's view, it makes no sense for the amount of the claim or relief sought to constitute a restriction on the arbitrator. If the parties submitted to the arbitrator the question of whether a claimant should be compensated a specified sum, then, by awarding a different sum, the arbitrator exceeds his power. But when the submission is general, as here, and includes an agreement to decide by arbitration all disputes under the contract, the arbitrator is free to award more or less than the amount claimed. The essence of the submission is that the arbitrator resolve all disputes. *A statement of the amount claimed is a guide to the arbitrator, but not a limitation on his power.*" (Citations omitted; emphasis added.) Id., 21–22. This court agrees and holds that the claim amount listed in the applicant's demand for arbitration did not limit the arbitrator's power to award a larger sum.

Moreover, the respondent misapprehends the nature of the submission in this case. The "submission" to which the arbitration award must conform is defined by § 11 (f) of the agreement, *not by the demand for arbitration form filed by the applicant.* "The arbitra-

tion clause in a contract constitutes the written submission to arbitration. . . . If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration." (Citations omitted; internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 229, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). Section 11 (f) of the agreement defined the parties' submission in broad terms to include "any dispute arising directly or indirectly from the performance or breach of a party's obligations under this [agreement]" and "all questions of law and fact between the parties . . . ."[4] Thus, and as noted by the court in *Quinn Associates, Inc.* v. *Borkowski*, supra, 41 Conn. Supp. 17, "[t]he agreement of submission in this case is the . . . contract between the parties, which provided: 'All claims, disputes and other matters in question . . . arising out of or relating to this [a]greement or the breach thereof, shall be decided by arbitration . . . . The demand for arbitration identified the nature of the dispute as the contract balance due the plaintiff. In deciding the defendant's claim that the arbitrator exceeded his powers, within the meaning of § 52-418 (a) (4), this court need only examine the submission and the award to determine whether the award conforms to the submission. . . . Here the submission covered all claims in question under the contract, and the award was in full and final settlement of all such claims. Thus, the award conforms to the submission and is within the authority of the arbitrator." Id., 20–21; see also *Blatt* v. *Farley*, 226 Cal. App. 3d 621, 627, 276 Cal. Rptr. 612 (1990) (rejecting party's attempt to convert demand for arbitration into submission agreement). The arbitrator did not exceed his authority in awarding a sum in excess of the claim amount reflected in the demand for arbitration filed by the applicant, as the award was within the scope of the parties' prearbitration submission as set forth in § 11 (f) of the agreement.[5]

IV

The respondent also contends that the arbitrator exceeded his authority under § 52-418 (a) (4) by requiring the respondent to pay one-half of the arbitration fee and denying the respondent an award of attorney's fees. The respondent's argument is based on the claim that the agreement was unambiguous with respect to an award of fees, and that the arbitrator mistakenly interpreted and applied, and improperly reformed, the fee provisions of the arbitration clause of the agreement.

The respondent does not dispute that the submission was unrestricted, except as to an award of special, consequential, or punitive damages. "Even in the case of an unrestricted submission, however, a reviewing

court will vacate an award when an arbitrator has exceeded the power granted to [him or] her by the parties' submission. . . . [A] claim that [an arbitrator has] exceeded [his or her] powers may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the [arbitrator] manifestly disregarded the law." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, supra, 331 Conn. 531–32. Thus, the court is faced with a two part inquiry.

As for conforming with the submission, "[w]hen the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . [Moreover] the factual findings of the arbitrator . . . are not subject to judicial review." (Citation omitted; internal quotation marks omitted.) *Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO* v. *Norwalk*, 324 Conn. 618, 628, 153 A.3d 1280 (2017). "[U]nder an unrestricted submission, the [arbitrator's] decision is considered final and binding; thus the courts will not review the evidence considered by the [arbitrator] nor will they review the award for errors of law or fact. . . . A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, supra, 331 Conn. 531. Given the unrestricted nature of the parties' submission with respect to all issues other than the award of special, consequential, or punitive damages, the court will not review the errors of law or fact alleged by the respondent with respect to the arbitrator's award of fees. See, e.g., *Quinn Associates, Inc.* v. *Borkowski*, supra, 41 Conn. Supp. 21 ("Here the submission covered all claims in question under the contract, and the award was in full and final settlement of all such claims. Thus, the award conforms to the submission and is within the authority of the arbitrator.").

As for the claim that the arbitrator acted in manifest disregard of the law in awarding fees, our Supreme Court has "outlined the following burden of proof for claims that an arbitrator . . . issued a decision in manifest disregard of the law in violation of § 52-418 (a) (4) [as follows]: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, supra, 331 Conn. 533.

"We have emphasized . . . that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO* v. *Norwalk*, supra, 324 Conn. 629. "[Courts] are not at liberty to set aside an [arbitrator's] award because of an arguable difference regarding the meaning or applicability of laws urged upon it. . . . Even if an arbitrator misapplies the relevant law, such a misconstruction of the law [does] not demonstrate the [arbitrator's] egregious or patently irrational rejection of clearly controlling legal principles." (Citations omitted; internal quotation marks omitted.) *Lathuras* v. *Shoreline Dental Care, LLC*, 65 Conn. App. 509, 514, 783 A.2d 83, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001). "[M]anifest disregard of the law may be found only where the arbitrators understood and correctly stated the law but proceeded to ignore it." (Internal quotation marks omitted.) Id.; see also *Rai* v. *Barclays Capital, Inc.*, supra, 739 F. Supp. 2d 372 ("To constitute manifest disregard, the court must find that the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless [wilfully] flouted the governing law by refusing to apply it. Obtaining judicial relief on these grounds is rare." (Footnote omitted; internal quotation marks omitted.)).[6]

The respondent fails to meet its burden of proof here. The respondent argues that the fee award "is in direct contravention of the unambiguous language of the [a]greement . . . ." In doing so, the respondent demonstrates only its disagreement with the arbitrator's interpretation and application of legal principles. See *Lathuras* v. *Shoreline Dental Care, LLC*, supra, 65 Conn. App. 515 (affirming denial of motion to vacate where applicant had not demonstrated anything more than disagreement with arbitrator's interpretation and application of established legal principles). Such a disagreement is insufficient to satisfy the exacting standard required to demonstrate a manifest disregard of the law.

By way of example, in *JEM Builders, Inc.* v. *Zelvin*, Superior Court, judicial district of New London, Docket No. CV-04-4000119 (March 11, 2005) (*Hendel, J.*) (38 Conn. L. Rptr. 866), aff'd, 106 Conn. App. 401, 942 A.2d 455 (2008), the court considered a motion to vacate an arbitration award based in part on the argument that the arbitrators manifestly disregarded the law in interpreting a contract. In that case, the moving parties argued "that contract interpretation begins with the plain and ordinary meaning of the contract language. In effect, the defendants argue that the arbitrators ignored the normal rules of contract interpretation in arriving at the meaning of [a section of] the contract.

The parties agreed that disputes would go to arbitration . . . unless there is manifest disregard of the law. The defendants do not argue that the arbitrators ignored the law but rather that they ignored rules of contract interpretation." Id., 871. In denying the motion to vacate, the court in *JEM Builders, Inc.*, held that, "even if this court were to find that the interpretation of the contract should be other than what the arbitrators decided, in such a voluntary arbitration with an unrestricted submission, the court is not entitled to substitute its judgment for that of the arbitrators. This is true even if the arbitrators are wrong as regarding questions of law." Id.; accord *Henry* v. *Imbruce*, 178 Conn. App. 820, 843, 177 A.3d 1168 (2017), quoting *Oxford Health Plans, LLC* v. *Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064 186 L. Ed. 2d 113 (2013) ("[O]nce bound to arbitration, '[a] party seeking relief under [9 U.S.C. § 10 (a) (4)] bears a heavy burden. It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error. . . . Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits. . . . Only if the arbitrator act[s] outside the scope of his contractually delegated authority . . . may a court overturn his determination. . . . So the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.' "); *Southeastern Connecticut Resources Recovery Authority* v. *American Ref-Fuel Co. of Southeastern Connecticut*, 44 Conn. Supp. 482, 488, 692 A.2d 874 (1996), aff'd, 44 Conn. App. 728, 692 A.2d 832 ("[i]f the arbitrator did, in fact, make a mistake, the plaintiffs assumed that risk by agreeing to submit the dispute to arbitration"), cert. denied, 241 Conn. 914, 696 A.2d 341 (1997); see also *Beumer Corp.* v. *ProEnergy Services, LLC*, 899 F.3d 564, 566 (8th Cir. 2018) (in case involving arbitrator's interpretation of attorney's fees provision, holding that "[t]he parties bargained for the arbitrator's decision; if the arbitrator got it wrong, then that was part of the bargain").

Moreover, "[t]o prevail on its application to vacate an arbitration award pursuant to § 52-418 (a) (4), a party must show that the arbitrator knew that [his] award was contrary to the law." *Lathuras* v. *Shoreline Dental Care, LLC*, supra, 65 Conn. App. 515. This has not been demonstrated by the respondent.

In addition, the respondent argues that there was "no evidence" introduced that would support reformation of the fee and cost provisions of the arbitration clause. As there is no record of the arbitration proceeding, the court is unable to conclude whether or not such evidence was presented. Thus, the evidentiary record here is insufficient to support the respondent's challenge.[7]

Importantly, and as reflected in his written decision, the arbitrator's award with respect to attorney's fees and costs was made pursuant to § 31-72. As held by the arbitrator, "[§] 31-72, which is controlling, leaves the costs and attorney's fees to the discretion of the [a]rbitrator." Costs and reasonable attorney's fees may be awarded pursuant to § 31-72 (1). See, e.g., *Lathuras* v. *Shoreline Dental Care, LLC*, supra, 65 Conn. App. 514 ("[s]ection 31-72 authorizes the award of double damages and attorney's fees under circumstances where an employer has failed to pay an employee wages"). Section 31-72 is remedial and must be given a liberal construction in favor of those whom the legislature intended to benefit, namely, employees such as the applicant. See *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 98, 881 A.2d 139 (2005). Although the recovery of attorney's fees and double damages is appropriate "only when [it is] found that the defendant acted with bad faith, arbitrariness or unreasonableness"; (internal quotation marks omitted) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 269, 828 A.2d 64 (2003); in this case, the arbitrator made a specific finding that the respondent's termination of the applicant's employment was unreasonable or arbitrary. Thus, the award of attorney's fees and costs does not involve any obvious error of law or the arbitrator's decision to ignore the law. As the respondent has not demonstrated egregious or patently irrational rejection of clearly controlling legal principles by the arbitrator, its argument with respect to the award of fees and costs fails.

V

Finally, the respondent argues that it was beyond the arbitrator's authority to award double damages as to the applicant's proven lost wages, pursuant to § 31-72. The argument is *not* based on the restriction in § 11 (f) prohibiting the arbitrator from awarding special, consequential, or punitive damages. Rather, the claim is based on the contention that an arbitration is a not a "civil action," and § 31-72 provides that, "in a civil action," an employee may recover "twice the full amount of such wages, with costs and such reasonable attorneys fee's as may be allowed by the court . . . ."

In *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 77–78, our Supreme Court considered a party's application to vacate an arbitration award under § 52-418 (a) (4), in part, on the ground that the arbitrator manifestly disregarded the law in awarding double damages, attorney's fees, and costs pursuant to § 31-72. In asserting this argument, the applicant pointed to the fact that the employment agreement containing the arbitration submission prohibited the arbitrators from awarding punitive, exemplary, or special damages—language similar to that contained in § 11 (f) of the agreement. Id., 78. In rejecting the argument, the court discussed the distinction between punitive and exemplary dam-

ages, on the one hand, and statutory multiple damages, on the other. Id., 93–99. Following this discussion, the court in *Harty* concluded that the employment contract was "ambiguous with respect to whether the contract provision was designed to exclude the double damages provided for under § 31-72"; id., 98; and held that "the award of double damages under § 31-72 did not exceed the scope of the submission." Id., 99; see also *Lathuras* v. *Shoreline Dental Care, LLC*, supra, 65 Conn. App. 514–15 (rejecting argument that arbitrator's award of double damages under § 31-72 was in manifest disregard of law and affirming trial court's denial of application to vacate). Thus, our appellate courts have sanctioned arbitral awards that include double damages under § 31-72.

The respondent attempts to distinguish the holdings in *Harty* and *Lathuras* on the grounds that, in those cases, the parties did not argue that an arbitrator is barred from awarding double damages under § 31-72 because an arbitration is not a "civil action." Although the respondent is correct that the foregoing argument was not specifically raised in those cases, the holdings in *Harty* and *Lathuras* fairly imply that an arbitration is a "civil action" under § 31-72.

More important to the respondent's motion to vacate is that, as characterized by the respondent's counsel at oral argument, the issue of whether an arbitration is a civil action for purposes of § 31-72 is one of first impression. This characterization is fatal to the respondent's argument that the award of double damages was "beyond the authority of the arbitrator." If the issue raised by the respondent presents an unsettled question of law, the respondent cannot demonstrate the elements necessary to prove a manifest disregard of the law under § 52-418 (a) (4). See, e.g., *Wulfe* v. *Valero Refining Co.-California*, 687 Fed. Appx. 646, 648 (9th Cir. 2017) ("[t]hat the arbitrator failed to correctly predict future judicial decisions does not mean that she acted in 'manifest disregard' of the law" (citation omitted)); *G&K Services LUG, LLC* v. *Talent Creation, Ltd.*, United States District Court, Case No. 3:16-cv-180 (S.D. Ohio February 23, 2017) ("[a]s the law . . . is unsettled, the arbitrator's decision . . . could not have violated clearly established precedent . . . and the [arbitrator's decision] was not in manifest disregard of [the] law" (citation omitted; internal quotation marks omitted)). If the question is unresolved, the alleged error could not be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator . . . ." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, supra, 331 Conn. 533. Furthermore, where a novel legal issue is involved, the arbitrator cannot be presented with a clearly governing legal principle that he decided to ignore. Finally, as the respondent claims that the issue is one of first impression, the governing

law alleged to have been ignored by the arbitrator cannot be well defined, explicit, and clearly applicable. The respondent has not demonstrated that, in connection with the award of double damages under § 31-72, the arbitrator exceeded his powers or imperfectly executed them in violation of § 52-418 (a) (4).

## CONCLUSION

For the foregoing reasons, the motion to vacate and/or modify the arbitration award (No. 120.00) is DENIED, and the objection thereto (No. 124.00) is SUSTAINED; the application to confirm the arbitration award (No. 123.00) is GRANTED.

* Affirmed. *Lemma* v. *York & Chapel, Corp.*, 204 Conn. App.     ,      A.3d (2021).

[1] On both occasions, the respondent's attorney's continuance requests were sent to the applicant's counsel, with the arbitrator copied on the correspondence.

[2] Section 10 of title 9 of the United States Code is part of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

[3] This court has considered at length the history of arbitration in our common-law tradition. *Silverstone* v. *Connecticut Eye Surgery Center South, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-18-6080472-S (October 23, 2018) (*Pierson, J.*). In so doing, the court noted the similarity between Connecticut public policy and the public policy of the United States, both of which favor the arbitration of private disputes between litigants. Id.

[4] The only express limitation imposed by the submission is a prohibition against an award of special, consequential, or punitive damages.

[5] Although the "Claim Amount" reflected in the demand for arbitration was $35,450.10, the affidavit in support of the applicant's "Application for Order Pendente Lite in Aid of Arbitration and for Prejudgment Remedy," dated September 5, 2018, reads, in part, at paragraph 11, that "probable cause exists to support an award in my favor . . . and against [the] [r]espondent in *at least* the amount of $35,450.10, taking into account all of the [r]espondent's known defenses, counterclaims and setoffs." (Emphasis added.)

[6] In its brief, the respondent fails to cite a single case in which a court vacated an arbitration award based on manifest disregard of the law under § 52-418 (a) (4) or 9 U.S.C. § 10 (a) (4). With respect to § 52-418 (a) (4), it was recently noted in a decision considering a motion to vacate and a cross motion to confirm an arbitration award that "both parties conceded at oral argument that whether the arbitrator manifestly disregarded the law [is] a claim on which litigants have yet to prevail in our courts . . . ." (Citation omitted; internal quotation marks omitted.) *Monroe* v. *Directory Assistants, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-17-6084277-S (August 8, 2018) (*Gordon, J.*) (66 Conn. L. Rptr. 793, 794); see also *Trumbull* v. *UPSEU, Local 424, Unit 4*, Superior Court, judicial district of Fairfield, Docket No. CV-07-4021977 (January 10, 2008) (*Arnold, J.*) ("[t]he exceptionally high burden for proving a claim of manifest disregard of the law under § 52-418 (a) (4) is demonstrated by the fact that, since the test was first outlined in *Garrity* v. *McCaskey*, [223 Conn. 1, 612 A.2d 742 (1992)], our Supreme Court [has] yet to conclude that an arbitrator manifestly disregarded the law").

[7] In any case, as an award of fees and costs was within the parties' submission, the court will not review the arbitrator's decision for alleged errors of fact upon which the arbitrator's legal conclusions were based.